UNITED STATES v. R. F. DOWNING & CO.

SAME v. SCHOELLKOPF, HARTFORD & HANNA CO.

(Circuit Court of Appeals, Second Circuit.  January 10, 1906.)

Nos. 52, 126.

1. CUSTOMS DUTIES—CLASSIFICATION—PETROLEUM PRODUCTS—COUNTERVAILING DUTY.
     Paragraph 626, Free List, § 2, Tariff Act July 24, 1897, c. 11. 30 Stat. 199 [U. S. Comp. St. 1901, p. 1685], providing a countervailing duty on "crude petroleum, or the products of crude petroleum, produced in any country which imposes a duty on petroleum or its products exported from the United States," is intended to provide that, when crude petroleum or any of its products is imported from a country which imposes a duty thereon when imported from the United States, it shall pay duty at the rate so imposed by such country on merchandise in the same condition. A product of petroleum is subject to the duty so imposed by the country of manufacture on such product when coming from the United States, rather than to that so imposed on crude petroleum by the country in which the petroleum was produced. If no duty is so imposed on such product by the country in which it is manufactured. it is not liable to the countervailing duty, even though produced from petroleum originating in a country which does impose such a duty thereon.

2. SAME—PARAFFIN—SPECIFIC ENUMERATION.
     The proviso in paragraph 626, Free List, § 2. Tariff Act July 24, 1897, c. 11, 30 Stat. 199 [U. S. Comp. St. 1901, p. 1685], providing a countervailing duty on "crude petroleum, or the products of crude petroleum," is not limited to the articles enumerated in the preceding portion of that paragraph, but should be read into every section of the tariff which enumerates a product of petroleum. The special enumeration of "paraffin" in paragraph 633, Free List, § 2, of said act (30 Stat. 200 [U. S. Comp. St. 1901, p. 1686]), does not remove that substance from the scope of the proviso.

3. SAME—PRODUCTS OF PETROLEUM—ARTICLES IN CHIEF VALUE OF PETROLEUM.
     The provision in paragraph 626, Free List, § 2, Tariff Act July 24. 1897, c. 11, 30 Stat. 199 [U. S. Comp. St. 1901, p. 1685], for "products of crude petroleum," does not include articles not composed in chief value of petroleum, even though the petroleum predominates in quantity.

4. SAME—DETERMINATION OF COMPONENT OF CHIEF VALUE.
     The determination as to the component material of chief value of imported merchandise is to be in reference to the values of the components in the country where the compound is produced. Evidence as to the

value of one component material in one country and of another component in another country is not sufficient to overcome the sworn statement of the manufacturer of the goods.

5. STATUTORY CONSTRUCTION—SCOPE OF PROVISO—POSITION OF PROVISO.

The general rule that a proviso to a particular section does not apply to other sections, but is to be construed with reference to the immediately preceding parts of the clause to which it is attached, is not controlling, especially in such composite structures as tariff and appropriation acts. The true rule seems to be that while the position of a proviso in a statute has a great and sometimes controlling influence upon the question of its application, yet the inference from its position cannot overrule its plain general intent.

[Ed. Note.—For cases in point, see vol. 44, Cent. Dig. Statutes, § 310.]

Coxe, Circuit Judge, dissenting.

Appeal from the Circuit Court of the United States for the Southern District of New York.

These causes come here upon appeals from decisions affirming in the first cause and reversing in the second cause the decision of the Board of General Appraisers touching the rates of duty on certain importations under the tariff act of July 24, 1897. The facts are fully set forth in the opinion. The relevant paragraphs are Nos. 626 and 633, both on the free list, which read as follows:

"(626) Oils: Almond, amber * * * ; petroleum crude or refined: Provided, That if there be imported into the United States crude petroleum, or the products of crude petroleum produced in any country which imposes a duty on petroleum or its products exported from the United States, there shall in such cases be levied, paid, and collected a duty upon said crude petroleum or its products so imported equal to the duty imposed by such country." 30 Stat. 199, c. 11, § 2, Free List [U. S. Comp. St. 1901, p. 1685].

"(633) Paraffin." 30 Stat. 200 [U. S. Comp. St. 1901, p. 1686].

For decisions below, see (1) 135 Fed. 250, affirming a decision of the Board of United States General Appraisers (G. A. 5,470, T. D. 24,778), which had reversed the assessment of duty by the collector of customs at the port of New York, and (2) 139 Fed. 58, reversing decisions of the Board, which had affirmed the assessment of duty by said collector. Note G. A. 5,658, T. D. 25,237.

Charles Duane Baker, Asst. U. S. Atty.

Comstock & Washburn (Albert H. Washburn, of counsel), for appellees.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

LACOMBE, Circuit Judge. In the Downing Case there was imported paraffin, which it is not disputed was "manufactured in Hamburg from crude petroleum produced in Russia." The collector charged a countervailing duty equal to the duty imposed by Germany on paraffin imported into Germany from the United States. The importer protested, claiming, first, that it was free under paragraph 633, and, secondly, that in view of the place of the production of the crude petroleum therein contained it should pay a less duty than that assessed.

The Board of General Appraisers overruled so much of the protest as claimed free entry, the court affirmed the Board, and the importers have not appealed. That question, therefore, is not before us in this case.

The second ground of protest was sustained, and the Board reversed the collector, holding that the duty to be assessed upon paraffin which the importers in the Downing Case concede to be a product of petroleum, should be equal to the duty imposed by Russia upon the crude petroleum out of which it was made. Their decision is based on a construction of paragraph 626, which finds that "Congress did not speak of the origin of the products made from petroleum, but only of the origin of the crude petroleum from which the products were made." We think this construction is too narrow. Evidently Congress wished to protect our own products by providing a countervailing duty against the country which assessed them, and that body recognized that the discrimination to be provided against was not only one which laid a duty upon crude petroleum, but also one which laid a duty upon the products of crude petroleum. It is to be inferred from the use of the four words, "petroleum, crude or refined," which immediately precede the proviso, that Congress intended to include refined petroleum among the products of crude petroleum. If the construction which the Board has approved is to be given to this paragraph, it would result that, where crude petroleum, produced in a country which laid no duty on our petroleum or petroleum products, was refined in a country which did impose a heavy duty upon our petroleum, etc., it should nevertheless come in free. We are of the opinion that Congress intended no such result, and that it intended to provide that when crude petroleum is imported it shall pay whatever duty is laid upon it in the country where it is produced, and that when any product of crude petroleum is imported it shall pay a duty equal to that imposed upon such product, when coming from the United States, in the country where it is produced. We think the collector correctly assessed duty on these products of crude petroleum at the rate imposed in the country where they were produced (Germany), and not at the rate imposed in the country where the crude petroleum from which they were produced originated. The decision of the Board in the Downing Case is therefore reversed.

In the Schoellkopf Case two varieties of commercial paraffin were imported, viz., Paraffin Liquid and Paraffin Molle. Two of the importations (ex. "Finland" and "Vaterland") were from Belgium. The paraffin in these two lots was manufactured of Russian crude oil at Antwerp, Belgium, and the deputy collector reports that:

"As Belgium is a country which does not impose a duty upon petroleum or its products exported from the United States [the collector], in the liquidation of the entries, charged a countervailing duty equal to the duty imposed by Russia on crude petroleum exported from the United States."

The Board sustained this assessment.

Under the construction of paragraph 626 already set forth, these products of crude petroleum were not liable to duty since the country which produced them did not impose duties on petroleum or petroleum products exported from the United States. As to these two importations, however, the protest claimed free entry only under paragraphs 633 and 695, so that this construction of paragraph 626 cannot be availed of by the importers, who indeed in the proceedings

before the Board took the ground that, if not free under paragraph, 633, their goods should pay the Russian duty. The Circuit Court held that these importations and also one from Germany (ex. "Moltke") were free of the countervailing duty of paragraph 626 because they were more specifically referred to in paragraph 633 as "Paraffin."

We are unable to concur in this conclusion. It might, indeed, be a fairly arguable question whether the designation "all such products of petroleum as are commercially known as paraffin" is or is not more specific than the designation "all such products of petroleum as are produced in a country which imposes duty on similar products exported from the United States"; but we do not find it necessary to decide this question. The fundamental rule of interpretation is to ascertain the intent of Congress, and the language used in the statute evidences that intent quite plainly. It is no doubt the general rule that a proviso to a particular section does not apply to other sections, and that it is to be construed with reference to the immediately preceding parts of the clause to which it is attached. But such rule is not controlling, especially in such composite structures as tariff and appropriation acts. In U. S. v. Babbit, 1 Black, 55 17 L. Ed. 94, it was held that the particular proviso then under consideration was "not limited in its effect to the section where it is found, but that it was affirmed by Congress as an independent proposition, applying alike to all officers of "this class," including officers not mentioned in the section which contained the proviso. The true rule seems to be that, "while the position of a proviso in a statute has a great and some-times a controlling influence upon the extent of its application, yet the inference from its position cannot overrule its plain general intent." Lewis' Sutherland Statutory Construction (2d Ed.) § 352, and authorities cited.

It will be observed that in paragraph 626 Congress enumerates as free of duty "petroleum, crude or refined." When, however, it provides in the same section for a retaliatory duty, it does not repeat the phrase "petroleum, crude or refined," nor does it import that phrase into the proviso by the use of the words "such petroleum." On the contrary, it makes a highly significant change of phraseology, laying retaliatory duty on crude petroleum and on "the products of crude petroleum." There are other products of crude petroleum besides refined petroleum, and the broad language it has used showed that Congress intended by the proviso to reach more than the crude and refined petroleum of paragraph 626. Any construction which would restrict the proviso to the articles already mentioned in the section would defeat that intent. Manifestly, Congress sought to induce reciprocity in petroleum products by discriminating against any country which discriminated against the United States. It has used language apt to express that intent, and we see no reason why the proviso should not be read into every section of the tariff act which enumerates a product of petroleum. The two sections may fairly be read together to effect such intent, as follows:

"Articles known commercially as paraffin shall have free entry, but if any of them is a product of crude petroleum—a product of which crude petroleum

is the component of chief value—and was produced in a country which lays duty," etc., "it shall pay an equal duty."

The evidence in this case would seem to indicate that all commercial paraffin is not a product of petroleum. As indicated above, two varieties are now under consideration: Paraffin Liquid and Paraffin Molle. The liquid came from Germany, accompanied by a declaration of the manufacturer that the "product consists of a mixture of ceresia and refined petroleum, * * * and that the ceresia represents the greater value and the refined petroleum the smaller value." Ceresia or ceresin is a mineral wax, and paragraph 695, referred to in the protest, accords free entry to "wax, vegetable or mineral." It is not petroleum, nor produced from petroleum. The government chemist testified before the Board that he had examined the liquid paraffin, and did not find any traces of ceresin in it; that it was a distillation product of petroleum, composed entirely of petroleum. Upon this testimony, and there was no other as to the nature of liquid paraffin, the finding of the Board that it was a product of petroleum is controlling. It should pay a countervailing duty under the retaliatory clause.

The Paraffin Molle was accompanied by a sworn statement from the manufacturer or shipper that it consisted of "a mixture of ceresin and refined petroleum, * * * and that in the manufacture ceresin represents the greater value and refined petroleum the smaller value." The government chemist confirms this by testifying that his analysis showed that it was a product of four parts liquid paraffin mixed with one part of ceresia. There was evidence, and the Board finds, that the article was probably identical, although under another name, with the albolene which was before the Circuit Court in Ropes v. U. S., 123 Fed. 990, and was held not chargeable with the countervailing duty because it was not composed in chief value of petroleum. There was evidence tending to show the value of ceresin in Germany and the value of liquid paraffin in Belgium, but none showing the value of both components in either country. The determination as to component material of chief value is to be in reference to the values of the components in the country where the compound is produced. There is nothing, therefore, in the record to overcome the sworn statement, which came with the goods; and the finding of the Board that the Paraffin Molle is composed in chief value of petroleum is without testimony to support it, and must be disregarded.

The result is that the particular Paraffin Molle now under consideration cannot be held subject to the retaliatory duty, since it is not shown to be a product of petroleum.

The decision of the Circuit Court in the Schoellkopf Case must, therefore also be reversed.

COXE, Circuit Judge (dissenting). I cannot agree with the majority of the court as I think Judge Wheeler's decision was right and should be affirmed. Paraffin appears eo nomine on the free list. Paraffin is a well known article of commerce not necessarily a product of petroleum, as the court has found in the case at bar. When paraffin

comes to our ports and the collector finds it specifically mentioned, without condition or qualification, in the tariff act, it would seem that he need look no further—his work is done. I cannot believe that in order to levy duty upon an article thus declared free, resort can be had to the mere proviso of a separate and distinct paragraph in which that article is not named at all. Paraffin is either crude or refined petroleum, or it is not. If not, paragraph 626, Free List, Tariff Act July 24, 1897, c. 11, § 2, 30 Stat. 199 [U. S. Comp. St. 1901, p. 1685], has no application whatever. If it be refined petroleum it is entitled to free entry unless dutiable under the proviso and its status for tariff purposes is fixed; no further legislation is needed.

The subsequent specific provision for paraffin by name without the words "not otherwise specifically provided for" makes it clear that Congress intended to admit this particular article free of duty notwithstanding previous general provisions which might include it. In any view it seems to me that the construction placed upon the law by the opinion of the court is not free from doubt. If Congress intended to impose duty upon an article appearing on the free list it should have made its intention manifest by plain and unambiguous language. It cannot be pretended that it has done this and it is a cardinal principle of tariff interpretation that the importer should not be compelled to pay under a doubtful interpretation of the law.